UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIANE L. McMILLAN, | |
| Plaintiff, | |
| -against- | 1:24-CV-5685 (LTS) |
| AMERICAN EXPRESS; THE BANK OF NEW YORK MELLON, | ORDER OF DISMISSAL |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Adriane L. McMillan, of Warner Robins, Georgia, appears *pro se* and brings this action invoking the court's federal question jurisdiction and diversity jurisdiction.[1] By order dated December 10, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. Plaintiff sues: (1) the American Express Company ("AmEx"), which, she alleges, is located in New York, New York, is incorporated in the State of New York, and has its principal place of business in the State of New York (ECF 1, at 2, 4); and (2) "the Bank of New York Mellon Corporation" ("BONYM") which, she alleges, is located in Wilmington, Delaware, is incorporated in the State of Delaware, and has its principal state of business in the State of Delaware (*id.* at 2, 5). Plaintiff alleges that the federal constitutional or federal statutory bases for her claims are the "Securities Act of 1933 Section 17(a)" and the "Securities Exchange Act of 1934 Section 10(b)." (*Id.* at 3.) She seeks damages and injunctive relief. (ECF 1-2, at 6.) For the reasons set forth in this order, the Court dismisses the action for

---

[1] Plaintiff originally filed her complaint (ECF 1) and request to proceed *in forma pauperis* (ECF 2) in the United States District Court for the Middle District of Georgia. By order dated July 19, 2024, that court transferred this action to this court. *McMillan v. Am. Express Co.*, 5:24-CV-0242 (M.D. Ga. July 19, 2024).

lack of subject matter jurisdiction, but grants Plaintiff 30 days' leave to replead her claims in an amended complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

Plaintiff states that she raises claims of "securities fraud [and] employment of manipulative and deceptive devices." (ECF 1, at 4.) She asserts that she "provided [AmEx] with a security and [it] did not disclose [that it was] selling [her] security!" (*Id.*) She also asserts that BONYM "failed to execute [her] valid order as the Entitlement Holder[,] which constitutes conversion of [her] property interest in the security entitlement." (*Id.* at 5.)

Plaintiff additionally alleges the following: AmEx's "National Bank issued an unfavorable decision in responding to an application provisioned by Plaintiff, . . . requesting right to access credit on January 27, 2024." (ECF 1-2, at 2.) AmEx's "Receivables Financing Corporation III, LLC took a security interest in the payment intangible[,] securitized the asset in

2

. . . [AmEx's] Credit Account Master Trust." (*Id.*) AmEx's "National Bank utilized [its] role as sponsor in the securitization structure and facilitated the sale of Plaintiff's self-liquidating general intangible to [AmEx's] Financing Corporation III, LLC as depositor and transferor then to the Master Credit Trust." (*Id.*)

BONYM, "as the securities intermediary with Stacey Poindexter as trustee in place, holds the underlying security on behalf of the entitlement holder, who is the purchaser according to the legal framework of the Uniform Commercial Code." (*Id.* at 3.) "Plaintiff, as entitlement holder[,] who is also the purchaser[,] has the right to a no-action pledge from the securities intermediary[,] which means the trustee cannot take any action with respect to the security entitlement without the purchaser's consent." (*Id.* at 4-5.) Plaintiff states that she "submitted an order warranting that the entitlement order was made by the appropriate person, and that there is no adverse claim to the security entitlement." (*Id.* at 5.) "On July 2, 2024, Plaintiff submitted a valid entitlement order . . . to Defendant to change . . . Plaintiff's security entitlement position into another available form of holding for which the entitlement holder is eligible." (*Id.*)

BONYM, "as securities intermediary and trustee, failed and refused to execute Plaintiff's order." (*Id.*) BONYM's failure "constitutes conversion of Plaintiff's property interest in the securities entitlement." (*Id.*).

Plaintiff states that:

[a]s a direct and proximate result of Defendant's conversion, Plaintiff has been deprived of the ability to transact in the securities entitlement and has suffered damages in an amount no less than $100,000[,] which represents the minimum denomination for which [AmEx] issued debt securities, representing the estimated value of the unexecuted order, the precise amount of which is unknown due to Defendant's failure to execute the order.

(*Id.*)

3

Plaintiff also states that "[t]hese violations are indicative of insider trading and constitute securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and [Securities and Exchange Commission (SEC)] Rule 10b-5." (*Id.* at 6.) She further states that AmEx "engaged in a scheme to trade on material, non-public information and disseminate false information to the market." (*Id.*) In addition, Plaintiff alleges that "[t]he registration statement and prospectus contained material misstatements and omissions regarding the company's issues." (*Id.*) Finally, Plaintiff asserts that BONYM, "as trustee[,] improperly seized and liquidated . . . [P]laintiff's securities without authorization, constituting conversion." (*Id.*)

Plaintiff seeks the following relief: (1) $50,000,000 in damages; (2) an order directing the "Securities Registrar to update the Securities Register documenting . . . [Plaintiff] as beneficial owner of [the] security[ies]"; (3) an order directing AmEx "to prov[ide] the Platinum Card that [Plaintiff] was denied, with no fixed credit limits, and a daily cash advance limit in the amount of $1,000"; (4) an order directing AmEx "to directly pass through 100% of the Principal and Interest payments with statements closing out monthly"; (5) an order directing AmEx "to deliver the credit card[] by next day air to Plaintiff's address"; (6) on order directing BONYM "to return 80% of the securitized asset net economic benefit to Plaintiff's Securities Account with [the] trustee retaining 20% of the net economic benefits for performing fiduciary duties, [the] value to be determined in the discovery process"; (7) an order directing BONYM " to return 80% of the securitized payment intangible cash flows with the trustee retaining 20% of the cash flows, [the] value to be determined in the discovery process"; and (8) an order directing BONYM "to share the [Committee on Uniform Securities Identification Procedures (CUSIP)] number developed." (*Id.*)

## DISCUSSION

The court appears to lack subject matter jurisdiction to consider this action. The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has subject matter jurisdiction only when a "federal question" is presented or, when asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

**A.    Federal question jurisdiction**

Plaintiff does not allege facts sufficient to establish the court's federal question jurisdiction to consider her claims. To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Mere invocation of federal question jurisdiction, without any facts demonstrating a

federal law claim, does not create federal question jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

Plaintiff's claims appear to arise out of AmEx's alleged rejection of Plaintiff's application for an AmEx Platinum Credit Card. They also appear to arise out of BONYM's alleged failure to carry out an order of Plaintiff's with regard to a security and BONYM's and/or AmEx's seizure of Plaintiff's securities. While Plaintiff mentions federal statutes and regulations, her allegations are conclusory and she has not pleaded facts that show that the court has federal question jurisdiction of her claims. Thus, inasmuch as Plaintiff invokes the court's federal question jurisdiction, the Court dismisses her claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to replead her claims in an amended complaint in which she alleges facts showing that the court has federal question jurisdiction of the claims raised in her amended complaint.

**B.    Diversity jurisdiction**

Plaintiff also does not allege facts sufficient to establish the court's diversity jurisdiction to consider any claims under state law that she is attempting to assert. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that she and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where she is domiciled, which is defined as the place where the individual "has [her] true fixed home . . . and to which, whenever [s]he is absent, [s]he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation

marks and citation omitted). An individual "has but one domicile." *Id.* A corporation is, however, a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters). A national bank, for diversity purposes, is considered to be a citizen of the "State designated in its articles of association as [the location of] its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *see* 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all [diversity] actions by or against them, be deemed citizens of the States in which they are respectively located."). "[A] limited liability company . . .[,] [however,] takes the citizenship of each of its members." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

There is a second component of diversity jurisdiction – the amount in controversy must be in excess of the sum or value of $75,000. *See* § 1332(a). The sum claimed by a plaintiff will control if it is made in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). The Court can dismiss a diversity action for failing to plead that the amount in controversy exceeds the sum or value of $75,000, but only if there is "a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke [diversity] jurisdiction." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see Ochoa v. Interbrew Am., Inc.*, 999 F.2d 626, 629 (2d Cir. 1993) ("[I]n determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in a complaint and not the validity of any asserted defenses."). "A plaintiff seeking to invoke diversity jurisdiction 'cannot[,] [however,] meet its burden of proof with mere conclusory allegations of indirect or speculative value.'" *Chavez v. Maker*, No. 1:18-CV-7965 (RA) (GWG),

2019 WL 4926348, at *4 (S.D.N.Y. Oct. 7, 2019) (citation omitted), *report & recommendation adopted sub nom.*, *Chavez v. Wylie*, 2019 WL 6873806 (S.D.N.Y. Dec. 17, 2019), *appeal dismissed*, No. 20-383, 2020 WL 4332758 (2d Cir. May 28, 2020); *Weir v. Cenlar FSB*, No. 7:16-CV-8650 (CS), 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (reasoning that "the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible" (citation omitted)).

Plaintiff alleges that she is a citizen of Georgia. (ECF 1, at 3.) She alleges that AmEx is incorporated in the State of New York and has its principal place of business in the State of New York.[2] (*Id.* at 4.) She also alleges that BONYM is incorporated in the State of Delaware and has its principal place of business in the State of Delaware.[3] (*Id.* at 5.) Accordingly, the Court will assume, for the purposes of this order, that the parties are diverse.

Plaintiff, however, has not alleged facts sufficient to show that her claims under state law satisfy the jurisdictional amount for diversity jurisdiction – an amount in excess of the sum or value of $75,000. This is because Plaintiff's allegations, to the extent that the Court can understand them, are completely speculative and conclusory, with no basis in fact demonstrating how such claims are worth in excess of the sum or value of $75,000, let alone the $50,000,000 in damages, the unlimited line of credit, and the other relief she seeks. (*See* ECF 1-2, at 6.) Accordingly, to the extent that Plaintiff asserts claims under state law under the court's diversity jurisdiction, the Court dismisses those claims for lack of subject matter jurisdiction. *See* Fed. R.

---

[2] Plaintiff seems to also or alternatively allege that AmEx is a limited liability company (an "LLC") and/or a national bank. (ECF 1-2, at 2.)

[3] BONYM may, however, be a national bank. *See Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 357-58 (5th Cir. 2017); *Ayers v. PHH Mortg. Corp.*, No. 20-CV-275, 2020 WL 3498158, *4 (D. Md. June 29, 2020), *aff'd as modified*, 848 F. App'x 590 (4th Cir. 2021) (unreported opinion).

Civ. P. 12(h)(3). The Court, however, grants Plaintiff leave to replead her claims under state law, brought under the court's diversity jurisdiction, in an amended complaint which she alleges facts showing that the court has diversity jurisdiction to consider such claims.

C.  **Leave to amend**

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that federal district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts show that the court has federal question jurisdiction and/or diversity jurisdiction to consider her claims, the Court grants her 30 days' leave to replead her claims in an amended complaint in which she demonstrates that the court has subject matter jurisdiction to consider this action.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), and declining to consider Plaintiff's claims under state law under its supplemental jurisdiction, *see* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court grants Plaintiff 30 days' leave to replead her claims in an amended

complaint in which she alleges facts showing that the court has subject matter jurisdiction to consider her claims.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), and declining to consider Plaintiff's claims under state law under its supplemental jurisdiction, *see* 28 U.S.C. § 1367(c)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   December 10, 2024
         New York, New York

                                          /s/ Laura Taylor Swain
                                             LAURA TAYLOR SWAIN
                                       Chief United States District Judge